UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ANTONIO DONTEZ WEBSTER,

                Plaintiff,

v.

UNKNOWN RUPERD,

                Defendant.

_____/

Case No. 2:25-cv-242

Honorable Maarten Vermaat

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendant is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendant has not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim.  Specifically, the Court will dismiss, for failure to state a claim, the following claims against Defendant Ruperd: Eighth Amendment verbal harassment claim, Fourteenth Amendment due process claim, and First Amendment retaliation claim.

Plaintiff's Eighth Amendment claim for excessive force against Defendant Ruperd remains in the case.  In addition, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims against Defendant Ruperd.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

**Discussion**

I.      **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains, however, occurred at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. Plaintiff sues MBP Correctional Officer **Unknown Ruperd** in his individual and official capacities.

Plaintiff alleges that on March 13, 2025, Defendant Ruperd "expressed his hate for these monkeys in the unit."[2] (Compl. ECF No. 1, PageID.2.) Plaintiff responded to "Defendant that the racist term used for Blacks was not disrespectful to one Black person, but to all." (*Id*.) While Defendant was "applying belly chains to escort Plaintiff to his attorney visit," he allegedly "began making monkey noises at Plaintiff." (*Id*., PageID.3.)

Then, as Plaintiff was walking up the gallery, "fully shackled," Defendant "roughly tugged on Plaintiff's chain, bear hugged Plaintiff from behind, and slammed Plaintiff." (*Id*.) Plaintiff claims that Defendant's actions "shattered Plaintiff's tooth . . . [and although] he was not in any way resisting . . . Defendant began bending Plaintiff's already cuffed arm to the backside until Plaintiff's arm popped." (*Id*.)

After the above-described incident, Plaintiff "was moved to a base cell," and he submitted a "medical kite for the fracture of his tooth, along [with] the lump on Plaintiff's elbow." (*Id*., PageID.3–4.) Later that day, Plaintiff received an assault and battery misconduct ticket, which accused him of spitting on and lunging towards another prisoner while being escorted by

---

2 In this opinion, the Court corrects the spelling, capitalization, and punctuation in quotations from Plaintiff's filings.

Defendant, prompting Defendant's use of force. (*See id*.) Plaintiff then filed a "grievance on [Defendant] for slamming Plaintiff while completely shackled and for falsely accusing Plaintiff of an assault." (*Id*., PageID.4.) Plaintiff claims that Defendant falsified the misconduct ticket issued against him. (*Id*., PageID.5.)

Two days later, on March 15, 2025, Plaintiff was "re-reviewed" on the assault misconduct ticket from March 13, 2025, and the updated misconduct ticket accused Plaintiff of assaulting a different prisoner. (*Id*., PageID.4.) Plaintiff "requested a statement from [the assaulted prisoner from the March 15, 2025, updated misconduct ticket] who denied ever being assaulted by Plaintiff in any fashion." (*Id*.) Plaintiff was "found not guilty of assault and battery but [was found guilty of] threatening behavior." (*Id*.) He was "then seen by dental who fixed Plaintiff's broken tooth and medical to get his swollen elbow x-rayed." (*Id*., PageID.4–5.)

Based on the foregoing allegations, Plaintiff avers that Defendant Ruperd's actions violated his Eighth Amendment right to be free from cruel and unusual punishment, his Fourteenth Amendment due process rights, and his First Amendment right to be free from retaliation. Additionally, the Court construes Plaintiff's complaint to raise an Eighth Amendment verbal harassment claim. Plaintiff seeks declaratory and injunctive relief, as well as damages.

## II.     Motion for the Court to Answer, Respond, or Reply

Plaintiff filed a motion requesting that the Court answer, respond, or reply to Plaintiff's pleadings "so the case can begin and move forward with the litigation process." (ECF No. 9.) In this opinion, the Court conducts a preliminary review of Plaintiff's complaint as required by the PLRA. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). Therefore, Plaintiff's motion asking the Court to take action in this case will be dismissed without prejudice as moot.

### III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## IV.    Discussion

### A.    Eighth Amendment Claims

#### 1.    Excessive Force

Plaintiff alleges that Defendant Ruperd used excessive force against him on March 13, 2025, in violation of Plaintiff's Eighth Amendment rights. (Compl., ECF No. 1, PageID.5.) Plaintiff claims that Defendant "bear hugged Plaintiff from behind and slammed Plaintiff," during which "Plaintiff was already fully shackled and getting his arm twisted while secured in belly chains." (*Id.*, PageID.3.) Plaintiff also claims that "[although] he was not in any way resisting . . . Defendant began bending Plaintiff's already cuffed arm to the backside until Plaintiff's arm popped." (*Id.*) Plaintiff's injuries included a broken tooth and swollen elbow. (*Id.*, PageID.4–5.)

As relevant to excessive force claims, the Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain."

*Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is a subjective component and an objective component to Eighth Amendment claims. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The objective component requires a "contextual" investigation that is "responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Although the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Here, Plaintiff alleges that he was "fully shackled," (Compl., ECF No. 1, PageID.4), and "was not in any way resisting," (*id*., PageID.3), when Defendant "bear hugged Plaintiff from behind and slammed Plaintiff," (*id*.), subsequently causing his broken tooth and swollen elbow. (*Id*., PageID.4–5.) At this early stage in the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him. Therefore, at this time, the Court will not dismiss Plaintiff's Eighth Amendment excessive force claim against Defendant Ruperd.

8

### 2. Verbal Harassment

The Court construes Plaintiff's allegations regarding Defendant's statements involving a racial slur as seeking to hold Defendant Ruperd liable for verbal harassment. (*See generally* Compl., ECF No. 1.)

Although unprofessional, allegations of verbal harassment or taunts by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) (per curiam). Additionally, allegations of verbal harassment do not rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *See id.*; *see Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits).

Accordingly, Plaintiff fails to state an Eighth Amendment claim premised on verbal harassment.

### B. Fourteenth Amendment Due Process Clause Claims

Plaintiff alleges that Defendant violated his Fourteenth Amendment due process rights as related to the issuance of a misconduct ticket. (*See* Compl., ECF No. 1, PageID.3–5.)

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To state a Fourteenth Amendment procedural due process claim, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

In *Sandin v. Conner*, the United States Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his [or her] sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). In *Sandin*, the Court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation for thirty days did not constitute an atypical and significant hardship within the context of his prison life. *Sandin*, 515 U.S. at 484; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Here, Plaintiff states that he received a falsified misconduct ticket for assaulting a prisoner on March 13, 2025, (Compl., ECF No. 1, PageID.2), and on March 15, 2025, he was "re-reviewed on the assault" and was accused of assaulting a different prisoner. (*Id*., PageID.4.) Plaintiff was found not guilty of the assault and battery misconduct charge but was found guilty of threatening behavior. (*Id*.) Plaintiff does not indicate what sanctions he received as a result of the threatening behavior misconduct conviction. (*See id.*)

To state a Fourteenth Amendment procedural due process claim, Plaintiff must show that the sanctions he received as a result of the misconduct conviction "inevitably affect[ed] the duration of [Plaintiff's] sentence" or imposed an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87. As an initial matter, because

10

Plaintiff does not indicate what sanctions he received as a result of the threatening behavior misconduct charge, he necessarily fails to show that he received any sanctions that implicate the Due Process Clause of the Fourteenth Amendment, And, regardless, the sanctions available in the MDOC disciplinary scheme do not affect the duration of an inmate's sentence, and placement in segregation or non-bond status for a limited period of time or the receipt of the loss of privileges sanction do not constitute "atypical and significant hardship[s]," as contemplated by *Sandin*. *See, e.g.*, *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007) (discussing that the loss of disciplinary credits under the MDOC's disciplinary scheme does not affect the duration of a prisoner's sentence); *Sandin*, 515 U.S. at 484 (holding that placement in segregation for 30 days does not impose an atypical and significant hardship); *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant); *cf. Bazzetta*, 430 F.3d at 805 (concluding that a permanent, but reviewable, loss of visitation privileges did not "rise[] to the level of egregious conduct necessary to implicate the implicit guarantees of the Due Process Clause" (citing *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003))); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no constitutional right to rehabilitation, education, or jobs).[3]

---

[3] Under these circumstances, Plaintiff has failed to show that he received any sanctions for these misconduct charges that impacted the duration of his sentence or constituted an "atypical and significant hardship." *Sandin*, 515 U.S. at 486–87. Moreover, even if Plaintiff had alleged the loss of a protected liberty interest, he would not state a due process claim because he fails to show that he did not receive all the process due to him. *See generally Wolff v. McDonnell*, 418 U.S. 539 (1974) (setting forth the minimum process required for prison disciplinary proceedings that implicate a liberty interest). Due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. That is, the right to due process protects Plaintiff's ability to *respond* to spurious charges. It does not include the right to *prevent* or *prevail* on such charges. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990).

Accordingly, for the reasons set forth above, Plaintiff fails to state any Fourteenth Amendment procedural due process claims against Defendant regarding his various misconduct charges and the hearings held for these misconduct charges.

### C.    First Amendment Retaliation Claim

Plaintiff alleges that Defendant Ruperd retaliated against him, in violation of the First Amendment, by "slamming Plaintiff while in full belly chains and falsifying a ticket against Plaintiff." (Compl., ECF No. 1, PageID.5.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### 1.    Protected Conduct

With respect to the first element of a First Amendment retaliation claim, the Court construes two allegations from Plaintiff to imply protected conduct: Plaintiff's verbal complaint to Defendant regarding his use of the term "monkey," (Compl. ECF No. 1, PageID.2–3), and Plaintiff's submission of a written grievance. (*Id.*, PageID.4.) A prisoner has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016).

12

Plaintiff alleges that after Defendant used the racial slur, "monkey," Plaintiff informed Defendant that the "racist term used for Blacks was not disrespectful to one Black person, but to all." (Compl., ECF No. 1, PageID.2.) Plaintiff also submitted a written "grievance on [Defendant] for slamming Plaintiff while completely shackled and for falsely accusing Plaintiff of an assault." (*Id*., PageID.4.)

At this stage of the proceedings, the Court assumes, without deciding, that Plaintiff's statement and written grievance were protected conduct for the purposes of his First Amendment claim.

### 2.    Adverse Action and Retaliatory Motive

Next, to establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. The Court addresses the physical altercation and misconduct ticket below.

### a.    Physical Altercation on March 13, 2025

After Plaintiff told Defendant he was "disrespectful" for his use of the term "monkey," Defendant allegedly made "monkey noises to Plaintiff" and then escorted Plaintiff in full belly chains. (Compl., ECF No. 1, PageID.2–3.) At some point during that escort, Plaintiff claims that Defendant bear hugged and slammed him. (*Id*., PageID.3.) At this stage of the proceedings, the

13

Court assumes, without deciding, that this force would be sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *See Thaddeus-X*, 175 F.3d at 396.

However, with respect to Plaintiff's oral complaint as the protected conduct, Plaintiff's retaliation claim fails on the third element because Plaintiff alleges no *facts* to show that Defendant acted due to Plaintiff's verbal complaints. Although temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" the Sixth Circuit has been reluctant to find that temporal proximity between the protected conduct and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Compare Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), *and Briggs v. Westcomb*, No. 19-1837 (6th Cir. Mar. 10, 2020) (unpublished) (holding that allegations of temporal proximity were sufficient where the filing of retaliatory misconduct by correctional officers occurred six days after Plaintiff filed a grievance against a medical provider, but only one day after the provider learned of the grievance), *with Hill*, 630 F.3d at 476 (discussing that the Sixth Circuit has been reluctant to find that temporal proximity alone shows a retaliatory motive).

Here, as detailed above, besides Plaintiff's conclusory assertion that Defendant retaliated against him because he verbally complained to Defendant about his use of racial slurs, Plaintiff alleges insufficient facts to show that the alleged adverse actions were in fact motivated by Plaintiff's protected conduct. Under these circumstances, the suggestion of temporal proximity alone is insufficient to show a retaliatory motive. *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987) ("[A]lleging merely the ultimate fact of retaliation is insufficient."); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant

14

particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Further, with respect to Plaintiff's claim of retaliation as it relates to his written grievance, this claim also fails on the third element. Because Plaintiff filed his written grievance after Defendant Ruperd's use of force, the grievance could not be a motivating factor behind Defendant's prior use of force. *See Thaddeus-X*, 175 F.3d at 394.

Therefore, Plaintiff's First Amendment retaliation claim premised on the March 13, 2025, physical altercation will be dismissed for failure to state a claim.

### b.    Misconduct Ticket

Following the physical altercation with Defendant, Plaintiff received a misconduct ticket for assault and battery against a prisoner. (Compl. ECF No. 1, PageID.4.) The issuance of a misconduct ticket constitutes adverse action. However, again, Plaintiff's retaliation claim premised on Plaintiff's oral complaint as the protected conduct fails at the third element because he fails to allege any facts to suggest that the ticket for assault and battery was issued because Plaintiff had verbally complained to Defendant. Instead, Plaintiff's retaliation claim regarding these events is entirely conclusory, and "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial." *See Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (internal quotation marks omitted).

Moreover, Plaintiff's claim for retaliation based on his written grievance also fails on the third element because his grievance was filed after the issuance of the misbehavior ticket. (Compl. ECF No. 1, PageID.4.) The written grievance was not a motivating factor behind Defendant's actions, as it occurred after the misconduct ticket was issued. *See Thaddeus-X*, 175 F.3d at 394.

15

Accordingly, for these reasons, Plaintiff's First Amendment retaliation claim premised on the issuance of a misbehavior ticket will be dismissed for failure to state a claim.

### D.      State Law Claims

Finally, Plaintiff alleges that Defendant Ruperd committed the "tort of assault and battery under the law of Michigan." (Compl., ECF No. 1, PageID.5.)

As an initial matter, as discussed above, Plaintiff's assertion that Defendant violated state law fails to state a claim under § 1983. *See Pyles*, 60 F.3d at 1215; *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Furthermore, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). Here, because Plaintiff continues to have a pending federal claim against Defendant, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims against Defendant Ruperd.

### Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis* (ECF No. 2) and dismiss Plaintiff's motion for the Court to answer, respond, or reply (ECF No. 9) as moot. Having conducted the review required by the PLRA, the Court will dismiss, for failure to state a claim, the following claims against Defendant Ruperd: Eighth Amendment verbal harassment claim, Fourteenth Amendment due process claim, and First Amendment retaliation claim.

16

Plaintiff's Eighth Amendment claim for excessive force against Defendant Ruperd remains in the case. In addition, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims against Defendant Ruperd.

An order consistent with this opinion will be entered.


Dated:    June 17, 2026                              /s/ *Maarten Vermaat*

                                                    Maarten Vermaat
                                                    United States Magistrate Judge